# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 17, 2015          Decided June 16, 2015

No. 14-7048

IN RE: DEBRA M. STEVENSON,

EUGENE SMITH AND DEBRA M. STEVENSON,
APPELLANTS

v.

FIRST AMERICAN TITLE INSURANCE COMPANY, ET AL.,
APPELLEES

———

Consolidated with 14-7049

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:13-cv-00258)
(No. 1:13-cv-00440)

———

*Eugene Smith*, pro se, argued the cause for appellants. With him on the briefs was *Debra M. Stevenson*, pro se.

*Michael S. Steadman* argued the cause for appellees. With him on the brief was *Michael N. Russo*.

Before: GRIFFITH and KAVANAUGH, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Debra Stevenson and her son Eugene Smith jointly own a house in Washington, D.C. When Stevenson and Smith bought the house, they took out a mortgage. In 2005, they decided to refinance the mortgage. They obtained a new $115,000 mortgage with a 6.5% interest rate from Wells Fargo Bank. In exchange for the new mortgage, Wells Fargo required Stevenson and Smith to sign a deed of trust. The deed of trust gave Wells Fargo certain rights to the house if Stevenson and Smith failed to repay the mortgage.

Later in 2005, Stevenson decided to refinance the mortgage a second time in order to obtain some cash. Stevenson refinanced with plaintiff HSBC Bank.[1] HSBC offered Stevenson a $135,000 mortgage with a 9.65% interest rate, with approximately $6,000 in cash provided up front to Stevenson. But there was a wrinkle: Only Stevenson signed the paperwork for the mortgage. Smith refused to sign the paperwork because he thought that the interest rate was too high.

Surprisingly, HSBC went ahead with the mortgage without Smith's signature. HSBC paid off the Wells Fargo mortgage in full, releasing Stevenson and Smith from the obligation to pay that mortgage. In exchange, Stevenson

---

[1] HSBC is the successor in interest to Fremont Investment and Loan. Fremont Investment and Loan originally entered into the mortgage with Stevenson. Fremont Investment and Loan later sold the mortgage. For simplicity, we will use "HSBC" to refer to HSBC and Fremont.

signed a deed of trust. That deed of trust gave HSBC certain rights to Stevenson's half-interest in the house if Stevenson failed to repay the mortgage. But Smith did not sign the deed of trust, and HSBC did not obtain any rights to Smith's half-interest in the house. As a result, without paying a cent, Smith ended up with a half-interest in the house free of *both* the Wells Fargo mortgage and the HSBC mortgage.

Soon thereafter, Stevenson declared bankruptcy and stopped making mortgage payments. But HSBC could not foreclose because Smith had not signed the HSBC deed of trust. HSBC filed this suit in Bankruptcy Court seeking equitable subrogation.[2] The doctrine of equitable subrogation permits courts to declare that the owner of a mortgage (HSBC) has the same rights as an earlier-in-time owner of another mortgage (Wells Fargo) on the same property, if certain conditions are met. The purpose of equitable subrogation is "to prevent forfeiture and unjust enrichment." *Eastern Savings Bank, FSB v. Pappas*, 829 A.2d 953, 957 (D.C. 2003) (internal quotation marks omitted).

Equitable subrogation would give HSBC the same rights to Stevenson and Smith's house that Wells Fargo obtained in the first refinancing. That would presumably make it easier for HSBC to initiate foreclosure proceedings and, in HSBC's view, prevent unjust enrichment of Smith.

Stevenson and Smith counter that the doctrine of equitable subrogation does not apply here. They also argue

---

[2] There are nominally three plaintiffs in this suit: HSBC, First American Title Insurance Company, and Wells Fargo Bank. First American Title Insurance Company issued a lender's title insurance policy on the mortgage, and Wells Fargo Bank is the servicing agent for the mortgage.

that even if equitable subrogation applies, the mortgage is invalid under D.C. and federal lending laws.

In thorough opinions, the Bankruptcy Court concluded that HSBC is entitled to equitable subrogation and rejected Stevenson and Smith's claims that the mortgage is invalid under D.C. and federal lending laws. The District Court agreed with the Bankruptcy Court's conclusions. We affirm.

I

We first consider the equitable subrogation issue. Our review is de novo. *See In re Hope 7 Monroe Street Limited Partnership*, 743 F.3d 867, 873 (D.C. Cir. 2014).[3]

Everyone agrees that equitable subrogation in this case is a matter of D.C. law. Under D.C. law, HSBC is entitled to equitable subrogation if it meets each prong of a five-part test: (1) HSBC paid off the Wells Fargo mortgage to protect HSBC's "own interest"; (2) HSBC has not "acted as a volunteer"; (3) HSBC "was not primarily liable" for the Wells

---

[3] Stevenson and Smith argue that the Bankruptcy Court did not have "authority over issues concerning Smith since he was a non-debtor." Stevenson and Smith Br. 30. We reject that argument. As the Bankruptcy Court correctly stated, HSBC's claim for equitable subrogation is "related to the bankruptcy case" and is "non-core in nature. The bankruptcy court is authorized to hear and make proposed findings of fact and conclusions of law in such non-core 'related to' proceedings." *In re Stevenson*, No. 06-00306, Adversary Proceeding No. 07-10005, 2013 WL 8149438, at *1 n.1 (Bankr. D.D.C. Jan. 4, 2013) (quoting 28 U.S.C. § 157(c)(1)). Stevenson and Smith's defenses to the validity of the mortgage are "a core proceeding going to enforceability of Fremont's deed of trust against Stevenson's interest in the real property and resolution of the debtor-creditor relationship." *Id.* at *1 (citing 28 U.S.C. § 157(b)(2)(K), 157(b)(2)(O)).

Fargo mortgage; (4) HSBC paid off the entire Wells Fargo mortgage; and (5) subrogation would "not work any injustice to the rights of others." *Eastern Savings Bank, FSB v. Pappas*, 829 A.2d 953, 961 (D.C. 2003) (internal quotation marks omitted). We have some sympathy for the commonsense premise of Smith's argument – after all, Smith never signed the HSBC mortgage paperwork, and no signature means no signature. But we must apply D.C. law. And under D.C. law, all five prongs of the equitable subrogation test are met here.

The first four prongs are straightforward in this case. First, HSBC paid off Stevenson and Smith's Wells Fargo mortgage to protect HSBC's own interest. By paying off the Wells Fargo mortgage, HSBC ensured that it would have a priority position in any future foreclosure proceedings. Second, and for the same reason, HSBC did not act as a volunteer. A lender is not a volunteer if it advances "money intending to get something for it." *Id.* at 961 n.14 (internal quotation marks omitted). Here, HSBC paid off the Wells Fargo mortgage intending to get something for it – in this case, a priority position in any future foreclosure proceedings. Third, HSBC was not liable for Stevenson and Smith's Wells Fargo mortgage. Fourth, HSBC paid off the entire Wells Fargo mortgage.

The fifth prong is less straightforward under the facts of this case, but we conclude that equitable subrogation would not work an injustice. To begin with, equitable subrogation does not in any way affect Stevenson's rights. And equitable subrogation likewise does not work an injustice on Smith. The Bankruptcy Court held that HSBC is entitled to equitable subrogation on the same terms as the Wells Fargo mortgage. So Smith is obligated to HSBC only for the balance of the Wells Fargo mortgage, and only at the lower interest rate of

the Wells Fargo mortgage. Equitable subrogation simply prevents Smith from enjoying a windfall. It does not work an injustice because it makes him no worse off than he would have been under the Wells Fargo mortgage had Stevenson never agreed to the mortgage with HSBC. *See id.* at 960-61.

In short, HSBC has met D.C. law's five-part test for equitable subrogation.

Stevenson and Smith nevertheless contend that equitable subrogation is not available here. Stevenson and Smith point out that HSBC *knew* that Smith refused to sign the deed of trust. And as a result, HSBC *knew* that it would not obtain any rights to Smith's half-interest in the house. Stevenson and Smith argue that equitable subrogation is not available if a lender has actual knowledge that it will not receive the same rights to a property as the previous lender and goes ahead with the mortgage anyway.

Under D.C. law, it is unsettled whether "actual knowledge bars equitable subrogation." *Id.* at 959 n.11. We must therefore decide that question in the first instance. Because "no D.C. Court of Appeals case is directly on point, we reason by analogy from D.C. cases to predict how that court would decide the question in a case like this." *Earle v. District of Columbia*, 707 F.3d 299, 310 (D.C. Cir. 2012) (internal quotation marks omitted).[4]

In an analogous case, *Eastern Savings Bank, FSB v. Pappas*, 829 A.2d 953 (D.C. 2003), the D.C. Court of Appeals relied on two sources of authority to determine whether a plaintiff was entitled to equitable subrogation. First, the D.C. Court of Appeals applied the basic principles

---

[4] The D.C. Court of Appeals is of course free to adopt a different approach.

established by *Burgoon v. Lavezzo*, 92 F.2d 726 (D.C. Cir. 1937).[5]  And second, the D.C. Court of Appeals consulted the Restatement (Third) of Property.  To answer the question in this case, we will use the same sources.

In *Burgoon*, the court stated that equitable subrogation "is a creation of equity, and is administered in the furtherance of justice."  *Burgoon*, 92 F.2d at 735 (internal quotation marks omitted).  The court endorsed an approach in which "no attention should be paid to technicalities which are not of an insuperable character, but the broad equities should always be sought out so far as possible."  *Id.* at 734 (internal quotation marks omitted).  The court therefore adopted a "rule requiring liberal application of the doctrine of subrogation."  *Id*. at 735.

*Burgoon* did not address whether actual knowledge bars equitable subrogation.  But *Burgoon* did adopt a rule requiring "liberal" application of the doctrine of equitable subrogation, albeit under somewhat different circumstances.  And under the "more liberal approach" to equitable subrogation, actual knowledge does not bar application of the doctrine.  *Bank of America, N.A. v. Prestance Corp.*, 160 P.3d 17, 26 (Wash. 2007) (en banc); *see also East Boston Savings Bank v. Ogan*, 701 N.E.2d 331, 335 (Mass. 1998) (Knowledge "is not necessarily fatal to" a claim for equitable subrogation, "if equity would nonetheless dictate the recognition of subrogation.") (internal quotation marks omitted).

In addition to *Burgoon*, the D.C. Court of Appeals looks to the Restatement for guidance on questions of law involving equitable subrogation.  The Restatement has adopted the more

---

[5] *Burgoon* was decided by the old U.S. Court of Appeals for the District of Columbia, which had combined federal and local jurisdiction.  The D.C. Court of Appeals has stated that "*Burgoon* is binding upon us."  *Eastern Savings Bank*, 829 A.2d at 958 n.10.

liberal approach to equitable subrogation, under which actual knowledge does not bar application of the doctrine. *See* Restatement (Third) of Property: Mortgages § 7.6 cmt. e (1997); *see also Bank of America*, 160 P.3d at 25-26 (describing Restatement position as "the more liberal approach").

Applying the principles of *Burgoon* and the Restatement, we conclude as a matter of D.C. law that actual knowledge does not bar equitable subrogation. HSBC is therefore entitled to equitable subrogation here.

That conclusion is buttressed by one other consideration. In *Burgoon*, the court determined that equitable subrogation was appropriate because the lender could have achieved the same result by taking an assignment of the original loan. *See* 92 F.2d at 736. The same is true here. Instead of taking out a new mortgage on the house, HSBC could have asked Wells Fargo to assign Wells Fargo's mortgage to HSBC. Through assignment, HSBC would have obtained Wells Fargo's rights to Smith's half-interest in the house.

In sum, HSBC is entitled to equitable subrogation under D.C. law.

## II

In addition to arguing that equitable subrogation is not available, Stevenson and Smith also raised several defenses under D.C. and federal lending laws to the validity of the HSBC mortgage. The Bankruptcy Court rejected them, as do we.

*First*, the Bankruptcy Court struck three of Stevenson and Smith's defenses as improperly pled. For each defense, Stevenson and Smith either failed to disclose the defense

during discovery or failed to disclose or allege any facts supporting the defense. The Bankruptcy Court accordingly struck all three defenses. The District Court affirmed.

We review the Bankruptcy Court's decision to strike Stevenson and Smith's defenses for abuse of discretion. *Cf. In re Greater Southeast Community Hospital Foundation, Inc.*, 586 F.3d 1, 4 (D.C. Cir. 2009). We agree that Stevenson and Smith either failed to disclose those defenses during discovery or failed to allege any facts to support the defenses. The Bankruptcy Court did not abuse its discretion by striking those defenses.

*Second*, the Bankruptcy Court ruled that Stevenson and Smith forfeited most of their remaining defenses. Under the rules of the Bankruptcy Court, Stevenson and Smith had to raise those defenses in a timely answer to HSBC's complaint. *See* Fed. R. Bankr. P. 7012(a). Stevenson and Smith failed to file a timely answer to the complaint. Because of that failure, the plaintiffs incurred $1,260 in additional attorney's fees. The Bankruptcy Court ruled that Stevenson and Smith could file an untimely answer to the complaint if they first paid $1,260 of the plaintiffs' attorney's fees. Stevenson and Smith refused to pay the fees. Accordingly, the Bankruptcy Court decided that Stevenson and Smith were not permitted to file an answer to the complaint, and that Stevenson and Smith as a result forfeited most of their defenses. The District Court concluded that the Bankruptcy Court's actions were appropriate under the circumstances.

We review the Bankruptcy Court's decision on this point for abuse of discretion. *Cf. English-Speaking Union v. Johnson*, 353 F.3d 1013, 1021 (D.C. Cir. 2004). When a party fails to meet a filing deadline, a lower court has discretion to sanction that party. One possible sanction is to

require the party who missed the filing deadline to pay the reasonable legal fees incurred by the other side as a result of the late filing. *See id.* at 1023. In this case, Stevenson and Smith had multiple opportunities to correct their untimely filing and did not do so. Under the circumstances, requiring Stevenson and Smith to pay $1,260 in legal fees as a condition of filing an untimely answer to the complaint was reasonable. The Bankruptcy Court did not abuse its discretion by holding that Stevenson and Smith forfeited most of their defenses.

*Third*, the Bankruptcy Court granted summary judgment to HSBC on Stevenson and Smith's remaining defenses. The District Court affirmed the Bankruptcy Court. We review the Bankruptcy Court's legal conclusions on this point de novo. *See In re Hope 7 Monroe Street Limited Partnership*, 743 F.3d 867, 873 (D.C. Cir. 2014); *United States v. Spicer*, 57 F.3d 1152, 1159 (D.C. Cir. 1995). The Bankruptcy Court's legal conclusions are correct.

Stevenson and Smith argue that the HSBC mortgage violates the federal Truth in Lending Act because Stevenson paid several fees during the refinancing that were not properly disclosed as finance charges. The Bankruptcy Court correctly noted that under the circumstances, the bank was not required to disclose the fees as finance charges. *See* 15 U.S.C. § 1602(bb)(4). Stevenson and Smith also argue that the HSBC mortgage is invalid because HSBC's predecessor bank was not properly licensed under Section 26-1103(a) of the D.C. Code. But banks are exempt from the licensing requirements of Section 26-1103(a). *See* D.C. Code § 26-1102(1). This includes industrial banks such as Fremont, HSBC's predecessor. *See id.* (exempting any "bank . . . incorporated or chartered under the laws of . . . any state" from the D.C. Code's licensing requirements); *cf. Blue v.*

*Fremont Investment & Loan*, 562 F. Supp. 2d 33, 44 & n.10 (D.D.C. 2008) (Fremont exempt from the District's licensing requirements for banks because it was chartered under the laws of California).

\* \* \*

We have considered all of the arguments raised by Stevenson and Smith. We affirm the judgment of the District Court.

*So ordered.*