*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CV-0339

DEBRA M. STEVENSON, *et al.*, APPELLANTS,

V.

HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR SG MORTGAGE SECURITIES TRUST 2006-FRE1, ASSET BACKED CERTIFICATES, SERIES 2006-FRE1, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2016-CA-008020-R(RP))

(Hon. Yvonne Williams, Trial Judge)

(Submitted March 19, 2024                    Decided October 10, 2024)

*Debra M. Stevenson*, pro se, and *Eugene Smith*, pro se.

*Sogol I. Plagany* and *Ellen Ann Williams* were on the brief for appellee.

Before EASTERLY and SHANKER, *Associate Judges*, and RUIZ, *Senior Judge*.

EASTERLY, *Associate Judge*: Appellants Debra Stevenson and Eugene Smith appeal a Superior Court order granting summary judgment to HSBC Bank USA, N.A. ("HSBC") on its claim for judicial foreclosure on a property they co-own. HSBC is the current holder of a note and deed of trust backed by the property, both of which were executed by Ms. Stevenson but not Mr. Smith. In Superior Court,

HSBC relied on a prior federal court adjudication of its right, under the common law doctrine of equitable subrogation, to stand in the shoes of a prior lender, Wells Fargo, whose loan was backed by a deed of trust signed by both Ms. Stevenson and Mr. Smith and was paid off in full by the loan backed by the note and deed of trust now held by HSBC. Ms. Stevenson and Mr. Smith challenge HSBC's right to judicial foreclosure and, in so doing, seek to relitigate whether HSBC's interest in the property was equitably subrogated to the position previously held by Wells Fargo.

"On appeal, this court reviews summary judgment *de novo*, conducting an independent review of the record and applying the same substantive standard used by the trial court." *Tolu v. Ayodeji*, 945 A.2d 596, 601 (D.C. 2008) (quoting *Murphy v. Schwankhaus*, 924 A.2d 988, 991 (D.C. 2007)). We may uphold the Superior Court's ruling only if we conclude that there were no genuine issues of material fact in dispute and that, viewing the evidence in the light most favorable to Ms. Stevenson and Mr. Smith, HSBC was entitled to judgment as a matter of law. *See Ward v. Wells Fargo Bank, N.A.*, 89 A.3d 115, 126 (D.C. 2014). Because we conclude that all but one of Ms. Stevenson and Mr. Smith's arguments are collaterally estopped by prior litigation of the same issues in federal court and that the remaining issue is without merit, we affirm.

## I.    Factual and Procedural Background

Ms. Stevenson and Mr. Smith co-own a property, 3721 Grant Place NE, Unit A,[1] which Ms. Stevenson first purchased in 1996.  In February 2005, Ms. Stevenson took out a $115,000 loan from Wells Fargo (the "Wells Fargo Loan") to refinance her mortgage on the property; in exchange, Ms. Stevenson executed a note and deed of trust with Wells Fargo.  Mr. Smith was not a borrower on the Wells Fargo Loan and did not sign the note, but he did sign the deed of trust.

Later that same year, Ms. Stevenson defaulted on the Wells Fargo Loan and refinanced her mortgage a second time, executing a new note and deed of trust with Fremont Investment & Loan ("Fremont") in exchange for a loan of $135,000 (the "Fremont Loan"), approximately $118,000 of which was used to pay off the balance of the Wells Fargo Loan.  This time, Mr. Smith did not sign either the note or the deed of trust.  Fremont was aware at the time of closing both that Mr. Smith was a co-owner of the property and that he did not intend to sign the loan documents.  The following year, Ms. Stevenson defaulted on the Fremont Loan and filed for bankruptcy.  Shortly thereafter, she sent a letter to Fremont indicating her intention to "rescind" the Fremont Loan because of the lender's "failure to make material

---

[1] There is some uncertainty in the record as to whether it is Unit A or Unit B.

disclosures concerning finance charges under the Truth in Lending Act."

In bankruptcy court, First American Title Insurance Company—title insurer for Fremont and its successors—commenced an adversary proceeding against Ms. Stevenson and Mr. Smith to "[d]etermine the applicability of liens against the . . . Property." HSBC, Fremont's eventual successor in interest, was later added as a plaintiff in this proceeding.[2] Because the bankruptcy court found that Mr. Smith had refused to be bound by the Fremont Loan and thus was not obligated thereunder, the only way HSBC could enforce its interest in Mr. Smith's share of the property was if it could stand in the shoes of the prior lender, Wells Fargo, whose loan had been secured by a deed of trust signed by both owners. The plaintiffs in the adversary proceeding, including HSBC, thus sought among other things a declaration that Fremont was subrogated to the priority position previously held by Wells Fargo.

The bankruptcy court eventually recommended that the federal district court

---

[2] The Fremont Loan note was sold at least twice following the refinance and was eventually placed into a securitized trust. HSBC's interest in the note and deed of trust is based on its role as trustee for that trust.

grant summary judgment for the plaintiffs,[3] finding that HSBC was the current holder of the note and thus a real party in interest, and that it was entitled to equitable subrogation with respect to the $118,000 balance on the Wells Fargo Loan paid off by Fremont, with an interest rate of 6.5 percent—the minimum interest rate set by the Wells Fargo Loan.[4] *In re Stevenson*, No. 06-00306, 2013 WL 8149187, at *13 (Bankr. D.D.C. 2013). After the federal district court adopted this decision, *In re Stevenson*, 519 B.R. 881, 884 (D.D.C. 2014), Ms. Stevenson and Mr. Smith appealed to the D.C. Circuit, which affirmed the summary judgment order in a published opinion. *In re Stevenson*, 789 F.3d 197 (D.C. Cir. 2015).

Following the conclusion of the federal litigation, HSBC filed suit in Superior Court for judicial foreclosure. HSBC subsequently moved for summary judgment, which the Superior Court granted, relying, inter alia, on the D.C. Circuit's opinion

---

[3] "Bankruptcy judges may hear and determine all cases under title 11 [of the Bankruptcy Code] and all core proceedings arising under title 11, or arising in a case under title 11 . . . . A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions . . . ." 28 U.S.C. § 157(b)(1), (c)(1). The bankruptcy court ruled that some of the issues in the case were core proceedings because they "affect[ed] the creditor-debtor relationship," while others, including the equitable subrogation claim, were "only related to the bankruptcy case and [we]re non-core in nature." *In re Stevenson*, No. 06-00306, 2013 WL 8149187, at *1 n.1 (Bankr. D.D.C. 2013).

[4] The interest rate set by the Fremont Loan had been higher, at 9.65 percent.

holding that HSBC was entitled to equitable subrogation. This appeal followed.

## II. Analysis

Ms. Stevenson and Mr. Smith make a number of arguments before this court, none of which entitle them to relief from the judgment of the Superior Court. First, they argue that the Superior Court erred in making a factual finding that "the federal court[] determin[ed] that HSBC purchased the mortgage from Fremont" and concluding that HSBC thus had standing to seek foreclosure. They further argue that the court legally erred in concluding that "the doctrine of equitable subrogation allow[ed]" HSBC to foreclose on the property; "[Ms.] Stevenson did not properly and timely exercise her right to rescind the Fremont loan . . . pursuant to the Truth in Lending Act"; and "[Mr.] Smith had a debt obligation to Wells Fargo that was paid off using the proceeds from the" Fremont Loan. We hold that Ms. Stevenson and Mr. Smith are precluded under the doctrine of collateral estoppel from raising these factual and legal arguments, each of which was previously litigated in federal court. And, as a result, we reject Ms. Stevenson and Mr. Smith's separately styled argument that the Superior Court erred in concluding that "HSBC established a prima facie case for judicial foreclosure," which is founded on arguments that they are collaterally estopped from making. Lastly, we reject their argument that the Superior Court erred in construing their cross-motion for summary judgment (which

they fail to acknowledge was filed out of time) as an opposition to HSBC's affirmative motion.

## A.    Collaterally Estopped Arguments

In its summary judgment order, the Superior Court ruled that HSBC was entitled to judicial foreclosure based on the resolution in federal court of "facts and law pertaining to Defendants' ownership of the Property and their obligations under the" Fremont Loan, which had a preclusive effect under the doctrine of collateral estoppel.  Collateral estoppel, also known as issue preclusion,

> renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.

*Wang v. 1624 U St., Inc.*, 252 A.3d 891, 900 (D.C. 2021) (quoting *Davis v. Davis*,

663 A.2d 499, 501 (D.C. 1995)).[5] "Collateral estoppel may be used offensively or defensively. Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against the same or a different party." *Modiri v. 1342 Rest. Grp.*, 904 A.2d 391, 394 (D.C. 2006) (quoting *United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984)). We review the arguments that Ms. Stevenson and

---

[5] Other jurisdictions have held that, "in determining the preclusive effect to be given to the judgment of" another court, the "issue preclusion rules of the [jurisdiction] that rendered the judgment must govern." See *Rourke v. Amchem Prods., Inc.* 384 Md. 329, 344 (Md. 2004). If that were the case here, we would look to federal law regarding issue preclusion, not D.C. law. Our court has not opined on this choice-of-law issue directly, however. HSBC's brief to this court cites to D.C.'s standard for collateral estoppel. And Ms. Stevenson and Mr. Smith neither cite to any relevant collateral estoppel case law from any jurisdiction, nor make any choice-of-law arguments. We thus rely on this court's collateral estoppel precedent for the purposes of this case, but we note that on the facts of this case we do not perceive any meaningful difference in our analysis if we were to apply federal law instead. *See Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007) (in order for collateral estoppel to apply, "(1) the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; (2) the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3) preclusion in the second case must not work a basic unfairness to the party bound by the first determination." (quoting *Yamaha Corp. of America v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (internal alterations omitted)); *see also Yamaha*, 961 F.2d at 254 ("An example of such [basic] unfairness [contemplated by the third prong of the test] would be when the losing party clearly lacked any incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude."). Specifically, as to the third prong of the collateral estoppel test under federal law, we discern no "basic unfairness" to Ms. Stevenson and Mr. Smith as a result of binding them to the outcome of bankruptcy litigation, given their ability to fully litigate the equitable subrogation issue in that forum.

Mr. Smith renew on appeal challenging HSBC's entitlement to judicial foreclosure and conclude that the Superior Court correctly determined that these arguments were barred by collateral estoppel.

### 1.  Standing

Ms. Stevenson and Mr. Smith first renew their challenge to HSBC's standing to seek judicial foreclosure, arguing that "a genuine issue of material fact exists as to whether HSBC is entitled to enforce the Fremont Note."  The Superior Court ruled that "collateral estoppel applies to the federal courts' determination that [HSBC] purchased the mortgage from Fremont," citing to the D.C. Circuit's description of the facts that "HSBC is the successor in interest to Fremont Investment and Loan" and that, after Fremont "entered into the mortgage with [Ms.] Stevenson," it "later sold the mortgage."  *In re Stevenson*, 789 F.3d at 199 n.1.  The Superior Court thus ruled that HSBC had standing to bring this action.  Ms. Stevenson and Mr. Smith argue that the Superior Court "erroneously asserts that the bankruptcy court and D.C. Circuit found that HSBC had purchased the Fremont Note" and that "the record also raises serious questions about the chain of title that would preclude summary judgment."

We agree that the Superior Court misstated the findings of the federal courts; HSBC was found to be Fremont's successor in interest, not because it had purchased

the note (it had not), but because it was the trustee for the trust in which the note had been placed. *In re Stevenson*, 2013 WL 8149187, at *4, *6. But this inaccuracy in the Superior Court's findings does not change the ultimate conclusion that HSBC has an enforceable interest in the note. The existence of this interest was actually and fully litigated by both parties—it was the subject of "thorough briefing" and a hearing before the bankruptcy court—and decided on the merits in a summary judgment ruling.[6] *Id.* at *4-11.

We are unpersuaded by Ms. Stevenson and Mr. Smith's argument that the federal court's decision on this point was not "essential to the bankruptcy court's equitable subrogation determination," and thus should not trigger collateral estoppel. Ms. Stevenson and Mr. Smith argue that "the bankruptcy court was clear that its decision" regarding "who was the real party in interest" did not resolve "whether any party was entitled to enforce the Fremont Note." For support, they cite to the bankruptcy court's explanation that First American, the title insurer who commenced the action, was a real party in interest even though it was "not the holder of the Fremont Note and not entitled to enforce it." But this discussion of First

---

[6] The bankruptcy court issued a "Memorandum Decision Submitting Proposed Findings of Fact and Conclusions of Law Recommending That the District Court Grant Summary Judgment in Favor of Plaintiffs on their Claim for Equitable Subrogation." *In re Stevenson*, 2013 WL 8149187. These proposals were adopted in full by the federal district court. *See supra* note 2.

American's status has no bearing on HSBC's status as holder of the note, which the bankruptcy court definitively resolved, and which was essential to its determination that HSBC, in its role as the note's holder, "is entitled to recover" under the terms of the Wells Fargo loan by way of equitable subrogation. *In re Stevenson*, 2013 WL 8149187, at *4, *13.

In sum, the Superior Court's factual misstatement notwithstanding, we agree that Ms. Stevenson and Mr. Smith are precluded from challenging HSBC's status as holder of the Fremont note and consequently from challenging HSBC's standing on that ground.

### 2. Equitable Subrogation

Ms. Stevenson and Mr. Smith argue that the Superior Court "erred in finding that [the] federal court's equitable subrogation determination entitles HSBC to foreclose against Defendants." We disagree.

There is no dispute that most of the elements of collateral estoppel are met here. HSBC's ability to enforce its interest in the property via equitable subrogation was "actually litigated" in federal court, decided "on the merits," and "essential to the judgment," and appellants had "a full and fair opportunity" to litigate the issue. *Wang*, 252 A.3d at 900 (quoting *Davis*, 663 A.2d at 501). Ms. Stevenson and

Mr. Smith nonetheless urge this court to consider whether Fremont's "actual knowledge" of Mr. Smith's interest in the property and refusal to sign the loan "bars the application of equitable subrogation," noting that the "majority view" across jurisdictions "is that actual knowledge of an intervening interest impairs the lender's right to subrogation." This is, indisputably, an issue this court has yet to address. The D.C. Circuit "reason[ed] by analogy from D.C. cases to predict how [this] court would decide the question." *In re Stevenson*, 789 F.3d at 202. The D.C. Circuit reached the conclusion that actual knowledge does *not* bar subrogation—but it observed in a footnote that "[t]he D.C. Court of Appeals is of course free to adopt a different approach." *Id.* at 202 & n.4. In light of this footnote, Ms. Stevenson and Mr. Smith argue that "this case is ripe for a decision to settle the uncertainty." While they do not clearly connect their argument to collateral estoppel, we nonetheless consider whether the D.C. Circuit's footnote calls into question the requisite finality of its judgment so as to undermine its preclusive effect.

The "view of finality that is appropriate with respect to issue preclusion" is "more pliant" than that required for claim preclusion. Restatement (Second) of Judgments § 13, cmt. b. Instead of requiring "the completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement," *id.*, courts may consider a number of factors, including "that the parties were fully heard, that the court supported its decision with a reasoned

opinion, [and] that the decision was subject to appeal or was in fact reviewed on appeal."[7]  *Id.* § 13, cmt. g.  The test of finality is ultimately a procedural one; it is not a question of "whether the court might have had doubts in reaching [its] decision."  *Id.*

Procedurally, the decision of the D.C. Circuit was the end of the road—its final disposition affirmed the judgment of the District Court, leaving no remaining steps but enforcement (which is what HSBC now seeks in its action for judicial foreclosure)—and Ms. Stevenson and Mr. Smith had a full opportunity to be heard at every step of the way.  The D.C. Circuit "supported its decision with a reasoned opinion," *id.*, dedicating several pages of analysis to its consideration of the question of equitable subrogation, weighing different jurisdictions' approaches to the impact

---

[7] Other courts have interpreted this "pliant" view of finality in the context of issue preclusion to "mandate[] a pragmatic approach with reference to judicial policy rather than to finality in a technical sense."  *Dyndul v. Dyndul*, 620 F.2d 409, 412 (3d Cir. 1980) ("Finality in the context [of issue preclusion] may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." (quoting *Lummus Co. v. Commonwealth Oil Refin. Co.*, 297 F.2d 80, 89 (2d Cir. 1961)); *see also* 18A Federal Practice & Procedure Jurisdiction § 4434 (3d ed.) ("Recent decisions have relaxed traditional views of the finality requirement by applying issue preclusion to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief.").  Our court has not opined directly on this question but, for the reasons discussed above, we need not decide just how flexible the concept of finality is in the context of issue preclusion to resolve this case.

of "actual knowledge," and "reason[ing] by analogy from D.C. cases to predict" how this court would come out on the question. *In re Stevenson*, 789 F.3d at 200-03. Finally, the decision was subject to appeal and was in fact appealed—Ms. Stevenson and Mr. Smith filed a petition for a writ of certiorari with the U.S. Supreme Court (the Supreme Court denied their petition). *Stevenson v. First American Title Ins. Co.*, 577 U.S. 1065 (2016) (mem.) (denying certiorari).

Assuming for the sake of argument the D.C. Circuit's footnote observing that this court "is of course free to adopt a different approach" indicated its "doubts in reaching [its] decision," Restatement (Second) of Judgments § 13, cmt. g, as noted above, that would not undermine its finality. Indeed, even if we disagreed with the federal courts' interpretation of D.C. law on this issue (one could certainly make a reasonable argument that a lender should not, as a matter of equity, be incentivized to extend a loan when it has actual knowledge that a part owner of the collateral refuses to sign on to the deed of trust), that disagreement would not be sufficient reason to hold that appellants were not collaterally estopped from relitigating this issue. Issue preclusion "is applicable to a valid . . . and final . . . judgment, even if

it is erroneous." Restatement (Second) of Judgments § 17(d) (Am. L. Inst. 1982).[8]

In any event, we interpret the D.C. Circuit's footnote merely to note that this court, in future decisions, would not be bound by the federal court's interpretation of D.C. law—which of course is true. *See M. A. P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) (explaining that this court is not bound by the decisions of the D.C. Circuit rendered after we became the highest court of the District of Columbia in February 1971). But for the purposes of the present litigation, between these two parties, this issue has been squarely decided.[9]

---

[8] *See also Walker v. FedEx Office & Print Servs., Inc.*, 123 A.3d 160, 166 (D.C. 2015) (noting that "[i]n general, mere claims of error in the underlying judgment are not an adequate basis to avoid application of collateral estoppel" and that "[w]here the underlying ruling was made by an agency rather than a court, we have stated that a showing of 'manifest error' may overcome the application of collateral estoppel," but where the prior proceeding is a judicial one, preclusion principles have a "rigid finality" (quoting *Oubre v. D.C. Dep't of Emp. Servs.*, 630 A.2d 699, 703 (D.C. 1993)); *Consol. Edison Co. of N.Y. v. Bodman*, 449 F.3d 1254, 1257 (D.C. Cir. 2006) ("[A] court conducting an issue preclusion analysis does not review the merits of the determinations in the earlier litigation.").

[9] The D.C. Circuit could have certified the question to this court. D.C. Code § 11-723(a). It chose not to do so, as was within its discretion. *See McKesson v. Doe*, 592 U.S. 1, 5 (2020) ("Certification is by no means 'obligatory' merely because state law is unsettled; the choice instead rests 'in the sound discretion of the federal court.' . . . Our system of 'cooperative judicial federalism' presumes federal and state courts alike are competent to apply federal and state law." (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974))). Nor did Ms. Stevenson and Mr. Smith ever argue, throughout the many years of federal court litigation, that HSBC's claim to equitable subrogation was one that required adjudication in D.C. courts, or ask the D.C. Circuit to certify this question of "actual knowledge" to the D.C. Court of

Thus we conclude that the Superior Court correctly determined that Ms. Stevenson and Mr. Smith are collaterally estopped from challenging HSBC's right to equitable subrogation.

Further, we disagree with Ms. Stevenson and Mr. Smith's assertion that the Superior Court's ruling on equitable subrogation somehow contradicted that of the bankruptcy court, which "expressly limited relief to the rights of Wells Fargo to the extent of the amount that was used to pay off the Wells Fargo mortgage." Ms. Stevenson and Mr. Smith seem to believe that the Superior Court's order purports to allow HSBC to enforce the *Fremont loan*, rather than to stand in the shoes of Wells Fargo and enforce the Wells Fargo loan. The bankruptcy court was clear that HSBC was entitled to equitable subrogation only with respect to $118,334.02, at an interest rate of 6.5 percent—the terms of the Wells Fargo Loan. *In re Stevenson*, 2013 WL 8149187, at *13. We see nothing in the Superior Court's order that contradicts these limitations. The Superior Court explained that "[s]ubrogation does not prejudice Defendant Smith" because "it merely places him in a similar situation to that which he would have been in had Plaintiff not paid off his debt to Wells Fargo." This accords entirely with the federal courts'

Appeals, as they could have done. *See* D.C. Code § 11-723(b) (a request for certification may be invoked by a federal court of appeals "upon motion of any party to the cause").

determination of the scope of equitable subrogation.

Finally, we reject Ms. Stevenson and Mr. Smith's argument that HSBC is only entitled to enforce an unsecured loan because "the Wells Fargo deed was released" when the balance of that loan was paid off by the Fremont Loan, and thus there is no longer a secured Wells Fargo Loan to enforce. This is the exact scenario that the doctrine of equitable subrogation exists to remedy—one in which a subsequent loan is used to pay off the balance of an earlier one. *See E. Sav. Bank, FSB v. Pappas*, 829 A.2d 953, 957 (D.C. 2003). The result of equitable subrogation is to place the subsequent lender in the same position that the earlier lender was in *before* the subsequent loan was used to satisfy the earlier debt. *See id.* ("[S]ubrogation is the substitution of one person to the position of another, an obligee, whose claim he has satisfied." (quoting *G.E. Capital Mortgage Servs., Inc. v. Levenson,* 657 A.2d 1170, 1172 (Md. 1995))).

### 3. Truth in Lending Act

Ms. Stevenson and Mr. Smith also argue that Ms. Stevenson rescinded the Fremont Loan pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f, and thus "the security interest [in her interest in the property] became void." TILA allows for rescission of a "consumer credit transaction" backed by a property "which is used as [the borrower's] principal dwelling," 15 U.S.C.

§ 1635(a), but the Superior Court ruled that Ms. Stevenson's effort to rescind her loan was untimely under the statute. *See id.* ("[T]he obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required . . . , whichever is later . . . ."). The Superior Court reasoned that TILA "provides an immediate escape valve from a transaction a consumer just entered into. It does not allow an individual to undo a transaction more than a year after consummating it." Ms. Stevenson and Mr. Smith challenge this ruling before this court, arguing that the "[f]ailure to disclose the proper finance charge and amount financed constitutes a material violation [of TILA] that entitles the borrower to rescind the loan within three years of the transaction consummation." *See* 15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . ."). Ms. Stevenson and Mr. Smith appear to argue that HSBC, by failing to disclose certain alleged finance charges in a "statement of material

disclosures,"[10] as described in 15 U.S.C. § 1635(a), did not complete the "delivery of the information" required under that section of the statute and thus the three-day clock for rescission never started ticking—giving Ms. Stevenson three years to rescind under section 1635(f).

We take no position on whether Ms. Stevenson had three days or three years to rescind her loan, because we conclude that she and Mr. Smith are collaterally estopped from challenging the validity of the Fremont Loan on TILA grounds. Before the bankruptcy court, Ms. Stevenson and Mr. Smith argued that a number of fees in the Fremont Loan constituted "finance charge[s] that Fremont failed to properly disclose in violation of TILA," which thus entitled Ms. Stevenson to rescission. The bankruptcy court rejected all but one of their TILA arguments on the merits. (The court determined that one argument related to a "binder fee"—that it was unreasonable and thus should have been disclosed as a finance charge—was forfeited because Ms. Stevenson and Mr. Smith had failed to file an answer raising

---

[10] "The term 'material disclosures' means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule," and other "disclosures and limitations" described in the statute's regulations. 12 C.F.R. § 226.23(a)(3) n.48. "The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4(a).

it as an affirmative defense, despite multiple opportunities to do so.) The D.C. Circuit also rejected appellants' TILA arguments, holding that "[t]he Bankruptcy Court correctly noted that, under the circumstances, the bank was not required to disclose the fees as finance charges."

In their brief to this court, Ms. Stevenson and Mr. Smith argue that there were "multiple examples" of TILA violations, though the only allegedly undisclosed charges they point to specifically are the "binder fee" (their challenge to which the bankruptcy court dismissed as forfeited) and "a fax communication show[ing] that Fremont's agents changed various charges . . . that were not disclosed." They provide no other information about either of these charges, nor do they offer any argument in support of their assertion that Fremont was obligated to disclose these charges under TILA. Further, although they provide several pages of statutory and regulatory background, they say nothing about the fact that both the bankruptcy court and the D.C. Circuit rejected their arguments that the lender had failed to disclose required finance charges and, accordingly, that Ms. Stevenson had properly rescinded her loan under TILA. Given this undisputed procedural history, the issue presented to this court, whether Ms. Stevenson "properly and timely exercised her right to rescind the Fremont loan" under TILA, has already been squarely decided and Ms. Stevenson and Mr. Smith are collaterally estopped from litigating it anew. Even if we identified the disclosure requirements associated with the "binder fee" as

a distinct sub-issue that was not litigated on the merits because the bankruptcy court deemed it forfeited, Ms. Stevenson and Mr. Smith's brief to this court offers no actual, developed argument to support the proposition, implied in their brief, that this was a finance charge the disclosure of which was required under TILA. In the absence of any such explanation, this argument would be forfeited if it were not collaterally estopped. *See Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990))).

### 4. Mr. Smith's Obligation Under the Wells Fargo Loan

In their list of "Issues Presented," Ms. Stevenson and Mr. Smith include "[w]hether the trial court erred in finding that [Mr.] Smith had a debt obligation to Wells Fargo that was paid off using the proceeds from the Fremont" loan. But in their brief, all they say on the matter is that Mr. "Smith has repeatedly argued and demonstrated that he was not a borrower on any of the loans related to the purchase and/or refinancing of the Subject Property." In the absence of any developed argument of this claim, we consider this argument forfeited. *Comford*, 947 A.2d at 1188. We note, however, that the bankruptcy court found, as a "material fact[] . . . not subject to any genuine dispute," that "both [Ms.] Stevenson and [Mr.] Smith

executed a deed of trust in favor of" Wells Fargo "in the amount of $115,000." *In re Stevenson*, 2008 WL 748927, at \*1 (Bankr. D.D.C. 2008). Ms. Stevenson and Mr. Smith are bound by that factual finding and its legal consequences. By executing the deed of trust, Mr. Smith put his interest in the property up as collateral for the Wells Fargo Loan—regardless of whether he himself was the borrower. *See* Restatement (Third) of Property-Mortgages § 1.3, cmt. a ("A mortgage securing the obligation of a person other than the mortgagor is valid, whether or not the mortgagor receives any identifiable benefit in return."); *see also Yasuna v. Miller*, 399 A.2d 68, 71-72 (D.C. 1979) (explaining that "deeds of trust" are "generally equivalent to common law mortgages, a mortgage being by definition an interest in property given as security for the payment of a debt.").

### 5. HSBC's Prima Facie Case

Ms. Stevenson and Mr. Smith separately assert that "HSBC fail[ed] to establish a prima facie case for foreclosure." A plaintiff makes a prima facie case for judicial foreclosure by showing that it is "the current holder of the Note and the beneficiary of the Deed of Trust"; that the defendant "defaulted on the Note and failed to cure the default"; and that the plaintiff is "entitled to enforce the Deed of Trust through a judicial foreclosure sale of the Property." *Archie v. U.S. Bank, N.A.*, 255 A.3d 1005, 1011 (D.C. 2021). The only arguments that Ms. Stevenson and

Mr. Smith raise in support of their contention that HSBC failed to establish its prima facie case are (1) that "HSBC did not purchase the Fremont Note" and (2) that "Defendants have no debt obligation related to the Fremont Loan." As explained above, each of these arguments has already been considered and rejected.

## B.    Ms. Stevenson and Mr. Smith's Cross-Motion for Summary Judgment

Lastly, Ms. Stevenson and Mr. Smith argue that the Superior Court erred by "constru[ing] Defendants' cross-motion for summary judgment as an opposition motion." But they fail to address the fact that they filed their cross-motion late. The court extended the dispositive motion deadline to January 28, 2023, and Ms. Stevenson and Mr. Smith did not file their cross-motion, together with their opposition to HSBC's summary judgment motion, until February 10 or 12, 2023.[11] Super. Ct. Civ. R. 16(b)(5)(F) (directing that "all motions must be filed by" the deadline provided in the court's scheduling order); *see also Solomon v. Fairfax Village Condo. IV Unit Owner's Ass'n*, 621 A.2d 378, 380 (D.C. 1993) (Rule 16 gives parties "a carefully crafted, detailed road map which [they] must be expected to follow strictly"); Super. Ct. Civ. R. 56(b)(1) ("*Unless the court orders otherwise,*

---

[11] There is some uncertainty in the record as to whether Ms. Stevenson and Mr. Smith filed their motion on February 10 or February 12, 2023. Either way, they filed it approximately two weeks after the dispositive motion deadline had passed.

a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." (emphasis added)). Ms. Stevenson and Mr. Smith offer no explanation for why the court should have considered their untimely cross-motion. Reviewing for abuse of discretion, *see In Re Estate of Yates*, 988 A.2d 466, 468 (D.C. 2010), we discern no error in the court's decision to review the filing only as an opposition.

### III.   Conclusion

For the reasons stated above, we conclude that the Superior Court did not err in granting HSBC judgment as a matter of law on its claim for judicial foreclosure. Accordingly, the Superior Court's summary judgment order is affirmed.

*So ordered*.